AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH PARTICULAR
CELLULAR TOWERS IN THE VICINTY OF
175 N 11TH STREET, CAMBRIDGE, OHIO

)
)
)
)
)
)

Case No. 2:20-mj-455

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is fully incorporated herein.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery |

The application is based on these facts:
See Affidavit of FBI Special Agent Bryan Lacy, which is fully incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Bryan Lacy, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 29, 2020

City and state: Columbus, Ohio

_____
Elizabeth A. Preston Deavers
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

Records and information associated with communications to and from any and all cellular antenna towers ("cell towers") in the vicinity of 175 N 11th Street, Cambridge, Ohio 43725 on or about June 6, 2020 from 8:40 a.m. through 9:25 a.m. (EDT) that are within the possession, custody, or control of the following cellular service providers: AT&T Wireless, Sprint Corporation, T-Mobile US, Inc., and Verizon Wireless ("Providers").

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be Disclosed by the Provider**

For each cell tower in described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States records and other information (not including the contents of communications) about all communications made using the cellular tower(s) identified in Attachment A during the corresponding timeframe(s) listed in Attachment A, including records that identify:

    a.  the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

    b.  for each communication, the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device;

    c.  the date, time, and duration of each communication; and,

    d.  the type of the communication transmitted through the tower (such as phone call or text message).

These records should include records about communications that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of a violation of Title 18, United States Code, Section 2113(a), bank robbery, on or about June 6, 2020 from 8:40 a.m. through 9:25 a.m. (EDT).

The government is asking for a narrow timeframe in an attempt to identify only cellular telephone numbers that are present during the time of the bank robbery. The government will also attempt to narrow the scope of the information by applying other investigation techniques to the information obtained from the Providers.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH PARTICULAR CELLULAR TOWERS IN THE VICINITY OF 175 N 11TH STREET, CAMBRIDGE, OHIO | Case No. _____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Bryan Lacy, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a warrant for records and information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of

    a. **AT&T Wireless**, a cellular service provider headquartered in North Palm Beach, Florida;

    b. **Sprint Corporation**, a cellular service provider headquartered in Overland Park, Kansas;

    c. **T-Mobile US, Inc.**, a cellular service provider headquartered in Parsippany, New Jersey; and

    d. **Verizon Wireless**, a cellular service provider headquartered in Bedminster, New Jersey.

The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure to require AT&T

Wireless, Sprint Corporation, T-Mobile US, Inc., and Verizon Wireless, hereinafter referred to as the "Providers" to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation and have been since March 2010. I am currently assigned to the Cincinnati Division, where I investigate among other things, violent crimes, weapons violations, money laundering, and fraud. I have received specialized training in investigating violations of federal statutes from the FBI. I have conducted physical and electronic surveillance, debriefed confidential human sources, and participated in numerous arrests. In addition, I have written, sworn to, and executed numerous search warrant affidavits.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of Title 18, United States Code, Section 2113(a) (bank robbery) has been committed by an unknown person or persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.      On Saturday, June 6, 2020, at approximately 9:06 a.m., the Cambridge Police Department was dispatched to the Huntington National Bank, 175 N 11th Street, Cambridge,

2

Ohio 43725, which is within the Southern District of Ohio, after it was reported that the bank had just been robbed.

6.     Witnesses reported that an unknown male subject entered the bank and handed a note to the teller demanding money. The teller complied with the note and the subject fled the bank with approximately $5,540.

7.     Witnesses described the subject as a white male in his late 20s to early 30s, approximately 5'6" tall, 160 to 175 pounds, wearing a gray or silver head wig and beard wig.

8.     A review of the surveillance video from a nearby business showed the subject pulling into a parking lot approximately one block from the bank in a silver-colored Nissan Murano, at approximately 8:56 a.m. The subject remained in the Nissan Murano in the parking lot for approximately ten minutes, before exiting the vehicle and walking to the Huntington National Bank. After robbing the bank, the subject returned to the Nissan Murano and departed from the area at approximately 9:10 a.m.

9.     During the course of the investigation, I discovered another bank robbery with a similar fact pattern that occurred on March 14, 2020, at the Citizens Bank, 165 S Broad Street, Grove City, Pennsylvania. The bank was robbed on a Saturday morning around 9:03 a.m., by a white male wearing a gray or silver head wig and beard wig with a demand note. After the robbery, the subject got into a silver or gray Nissan Rogue and departed from the area with approximately $8,570.

10.    The March 14, 2020 Citizens Bank robbery is being investigated by the FBI and the Grove City, Pennsylvania Police Department. I compared the surveillance photos from the March 14, 2020 Citizens Bank robbery in Pennsylvania and the June 6, 2020 Huntington National Bank robbery in Ohio. Due to the wig disguise, clothing, and glasses worn by the

3

subject in both robberies, as well as witness descriptions of the subject in both robberies, I believe both banks were robbed by the same individual. *See* Attachment C, surveillance image of the bank robber from the June 6, 2020 Huntington National Bank robbery that occurred in Cambridge, Ohio, and Attachment D, surveillance image of the bank robber from the March 14, 2020 Citizens Bank robbery that occurred in Grove City, Pennsylvania.

11.     On March 31, 2020, Chief United States Magistrate Judge Cynthia Reed Eddy, United States District Court for the Western District of Pennsylvania, authorized a "cell tower" search warrant related to the March 14, 2020 robbery of the Citizens Bank, in Grove City, Pennsylvania. The results of that search warrant are pending.

12.     I am aware that most people use and carry a cellular telephone. The systemic and pervasive use of cellular telephones by society generally cannot be denied. Indeed, Chief Justice Roberts, writing for a unanimous Court, observed that cellular telephones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). I am also aware that criminals, including bank robbers, frequently communicate with others before, during, and after they have engaged in criminal activity. Additionally, I know that many people use cellular telephones as a GPS device to obtain driving directions and to determine fastest routes when traveling. Because the robber's identity is currently unknown, it is possible the robber is unfamiliar with the area and queried directions on how to depart the area, either before he went into the bank (while sitting in his vehicle), or after he robbed the bank. I also know that cellular telephones may have access to the internet and the bank robber could have looked up information about the bank or about other information on his cellular telephone before or after the bank robbery.

4

13.     I believe, based upon my training and experience, that the cell tower information from at/near 175 N 11th Street, Cambridge, Ohio 43725 on or about June 6, 2020 from 8:40 a.m. through 9:25 a.m. (EDT), is relevant to an ongoing investigation in a variety of ways, including: 1) identifying a phone number for which to seek identifying cellular accounts of individuals located in the area of the bank that will establish a cellular telephone used by the bank robber and/or identify additional co-conspirators; 2) providing an evidentiary link to other evidence (e.g. possible account information that may establish a link to Internet based geolocation data); 3) as a basis to obtain a search warrant for historical cell site data connected with a cellular telephone number; and/or 4) comparing cellular tower data from the March 14, 2020 Citizens Bank robbery and the June 6, 2020 Huntington National Bank robbery to determine if the same cellular device was in the area of both bank robberies.

14.     In my training and experience, I have learned that the Providers are companies that provides cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

15.     Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a

5

Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

16. Based on my training and experience, I know that cellular providers, such as the Providers, routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower), to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication.

17. Based on my training and experience, I know that cellular providers, such as the Providers, have the ability to query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce the information described above. I also know that cellular providers have the ability to determine which cellular tower(s) provided coverage to a given location at a particular time.

18. Based on my training and experience and the above facts, information obtained from cellular service providers such as the Providers that reveals which devices used a particular cell tower (and, where applicable, sector) to engage in particular communications can be used to

6

show that such devices were in the general vicinity of the cell tower at the time the communication occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of 175 N 11th Street, Cambridge, Ohio 43725 on June 6, 2020 from 8:40 a.m. through 9:25 a.m. (EDT). This information, in turn, will assist law enforcement in determining which person(s) were present for the bank robbery.

19.     Generally, the time frame was chosen within a fifteen (15) minute window on either end of the key surveillance footage obtained in this investigation. This window was chosen to maximize the likelihood of identifying the bank robber's cellular telephone number(s) while minimizing the amount of data obtained overall.

20.     The government is asking for a narrow timeframe in an attempt to identify only cellular telephone numbers that are present during the time of the bank robbery. The government will also attempt to narrow the scope of the information by applying other investigative techniques to the information obtain from the Providers.

21.     Given all of the features of current mobile phones, and how frequently they are used for numerous purposes, during the times delineated above and again in Attachment A, the subject likely used a cellular phone in a manner causing the subject's cellular phone to communicate with the Providers' cell towers. Information obtained from the Providers that reveals the cell tower (and, where applicable, sector) that were used by the subject's cellular devices can be used to show that the device was in the general vicinity of the cell tower at the time the communication occurred. A forensic comparison between the various cell towers can be used to identify the specific phone numbers belonging to the subject. Consequently, there is probable cause to believe that the records being sought from the cell towers at the locations identified above are relevant and material to the ongoing investigation into the bank robbery.

7

## AUTHORIZATION REQUEST

22.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Rule 41 of the Federal Rules of Criminal Procedure.

23.     I further request that the Court direct the Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Providers, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

24.     I further request that the Court order that all papers in support of this application, including the affidavit, attachments, and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, the premature disclosure may seriously jeopardize the investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee.

Respectfully submitted,



Bryan Lacy
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___June 29, 2020___, 2020.

Elizabeth A. Preston Deavers
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

Records and information associated with communications to and from any and all cellular antenna towers ("cell towers") in the vicinity of 175 N 11th Street, Cambridge, Ohio 43725 on or about June 6, 2020 from 8:40 a.m. through 9:25 a.m. (EDT) that are within the possession, custody, or control of the following cellular service providers: AT&T Wireless, Sprint Corporation, T-Mobile US, Inc., and Verizon Wireless ("Providers").

9

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be Disclosed by the Provider**

For each cell tower in described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States records and other information (not including the contents of communications) about all communications made using the cellular tower(s) identified in Attachment A during the corresponding timeframe(s) listed in Attachment A, including records that identify:

    a.    the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

    b.    for each communication, the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device;

    c.    the date, time, and duration of each communication; and,

    d.    the type of the communication transmitted through the tower (such as phone call or text message).

10

These records should include records about communications that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of a violation of Title 18, United States Code, Section 2113(a), bank robbery, on or about June 6, 2020 from 8:40 a.m. through 9:25 a.m. (EDT).

The government is asking for a narrow timeframe in an attempt to identify only cellular telephone numbers that are present during the time of the bank robbery. The government will also attempt to narrow the scope of the information by applying other investigation techniques to the information obtained from the Providers.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

11

## ATTACHMENT C

Surveillance image of the bank robber from the June 6, 2020 Huntington National Bank robbery that occurred in Cambridge, Ohio.



**ATTACHMENT D**

Surveillance image of the bank robber from the March 14, 2020 Citizens Bank robbery that occurred in Grove City, Pennsylvania.

